**SHELL PIPE LINE CORP., Plaintiff,**

v.

**WEST TEXAS MARKETING CORP., et al., Defendants.**

**Civ. A. No. H–81–1343.**

United States District Court,
S. D. Texas,
Houston Division.

May 20, 1982.

---

William G. Lowerre, Houston, Tex., for plaintiff.

Warren E. Connelly, In Charge Akin, Gump, Strauss, Hauer & Feld, Washington, D. C., for defendants.

## MEMORANDUM OPINION

McDONALD, District Judge.

This matter is before the Court upon the motion of defendant, West Texas Marketing Corporation, for preliminary and permanent injunctive relief pursuant to the interpleader statute codified at 28 U.S.C. § 2361. In particular, West Texas Marketing Corporation (hereinafter "WTM") requests this Court to issue an order enjoining

defendant Energy Cooperative, Inc. (hereinafter "ECI"), until further order of this Court, from taking any action in Adversary Proceeding No. 81 A 2075 (hereinafter "Chicago adversary proceeding") which would affect the property, instrument or obligation involved in the above-captioned interpleader action, namely, 155,000 barrels of crude oil, any proceeds thereof, rights accruing therefrom, and a six million dollar ($6,000,000) surety bond (as amended) posted by defendant P&O Falco, Inc.[1] The Chicago adversary proceeding was filed in the matter of *In re Energy Cooperative, Inc.*, No. 81 B 005811 currently before the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, at Chicago (hereinafter "Chicago Bankruptcy Court").

After careful consideration of the oral arguments heard on March 16, 1981, the parties memoranda and the applicable law, the Court entered an Order granting WTM's request for injunctive relief on April 6, 1982. This Memorandum Opinion is for the purpose of further explanation of that Order.

## A. Factual Background

A recitation of the factual background of this action aids in placing the legal issues in proper focus.

The instant interpleader action was initiated on May 27, 1981 by Shell Pipe Line Corporation's (hereinafter "Shell") filing of a Complaint for Interpleader Relief pursuant to 28 U.S.C. § 1335.[2] By filing its interpleader complaint, Shell sought a judicial determination of title to 155,000 barrels of crude oil for which it had received conflicting claims from WTM and defendant P&O Falco, Inc. (hereinafter "Falco").[3] Two days after Shell filed its interpleader

1. WTM initially requested this Court to issue an order restraining and enjoining any and all parties to the Chicago adversary proceeding. In particular, WTM sought to enjoin ECI and its co-plaintiff in the Chicago adversary proceeding, the Continental Illinois National Bank and Trust Company of Chicago, ("Continental Bank") from taking any action which would "keel haul" the property at issue in this interpleader action, into the Chicago Bankruptcy Court proceedings. At the March 16, 1982 hearing on WTM's Motion, WTM advised the Court that it no longer sought an injunction against any and all parties to the Chicago adversary proceeding rather it just sought an injunction against ECI.

2. 28 U.S.C. § 1335 provides:
    (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if
    (1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.
    (b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

3. The conflicting claims arose as follows: In April 1981 Shell received a telegram and Nomination Form from WTM by which WTM nominated for delivery to ECI 5,000 barrels per day of crude oil for the month of May 1981. That same month Shell received a telegram and letter from ECI by which ECI nominated its 5,000 barrels of crude oil to Falco (4,839 barrels) and Arco Petroleum Company (161 barrels). Falco in turn instructed Shell that it nominated its 4,839 barrels to Arco Petroleum (2,000 barrels), Coastal States Crude (2,385 barrels), and International Crude Corporation (454 barrels). On May 15, 1981 ECI filed a Chapter 11 Petition in

complaint both WTM and Falco sought temporary restraining orders requesting that the 155,000 barrels of crude oil in issue be delivered pursuant to their respective nominations.[4] This Court held a lengthy hearing on May 30, 1981 and entered a Temporary Restraining Order enjoining Shell to effectuate delivery of the disputed crude oil to defendant Falco. In turn, Falco was required to post a six million dollar ($6,000,000) bond on behalf of Shell. Thereafter, upon hearing a motion of WTM on June 26, 1981, the Court modified the injunction bond to run in favor of WTM as well as Shell. In addition, the Court advised the parties to the interpleader action that this matter would be set for a trial upon the merits as soon as the Court's docket would permit.

The title dispute which is the subject of this interpleader action was precipitated by ECI's filing of a voluntary Chapter 11 petition in bankruptcy on May 15, 1981, in the Chicago Bankruptcy Court. In the course of the Chapter 11 bankruptcy proceeding, styled *In re Energy Cooperative, Inc.*, No. 81 B 005811, ECT and Continental Bank, a secured creditor of ECI, filed a Complaint on June 18, 1981, praying that ECI be allowed to sell its existing inventory free and clear of liens, claims and other interests. The filing of this Complaint established Ad-

versary Proceeding No. 81 A 2075. West Texas Marketing Corporation, Falco and Arco Pipeline Company, all defendants in the interpleader action, were named as defendants (among others) in the Chicago adversary proceeding.[5] On June 19, 1981 the Chicago Bankruptcy Court ordered all parties asserting an interest in ECI's inventory to join the adversary proceeding.[6]

On June 26, 1981, ECI exercised its rights under the Bankruptcy Code and filed a self-executing Notice of Removal which removed the interpleader action from this Court to the United States Bankruptcy Court for the Southern District of Texas, Houston Division (hereinafter "Houston Bankruptcy Court").[7] WTM then filed an Application to Remand the interpleader proceeding back to this Court, on July 19, 1981, pursuant to 28 U.S.C. § 1478(b). ECI opposed WTM's remand motion and on November 4, 1981 filed its own motion to transfer the case to the Chicago Bankruptcy Court.

WTM's Application for Remand was considered by the Honorable Edward H. Patton, Jr., Chief Judge of the Houston Bankruptcy Court, in a hearing on November 9, 1981. At the hearing, ECI argued that Shell's initiation of the interpleader action was a violation of the automatic stay provisions of 11 U.S.C. § 362[8] and that the crude

---

the Chicago Bankruptcy Court. Immediately thereafter, on May 18, 1981, Shell received a copy of a telegram from WTM to ECI in which WTM demanded the return of all the crude oil it had nominated to ECI for May 1981. Subsequently, by letter dated May 19, 1981, WTM directed Shell to substitute Coastal States Trading, in the place of ECI, effective May 1, 1981, as the party nominated to receive the 5,000 barrels of crude oil per day which had previously been nominated to ECI. Shell made the tentative decision to honor WTM's renomination request but received a telegram from Falco wherein Falco threatened to sue Shell for damages if the original nomination to ECI was not honored.

4. See n. 3 *supra.*

5. Although WTM was named as a defendant in the caption of the Complaint, it was not identified as a party defendant in the body of the Complaint.

6. When ECI filed its schedule of assets and liabilities, pursuant to 11 U.S.C. § 521(1), with the Chicago Bankruptcy Court in September 1981 it stated therein that WTM and Falco had contingent claims against ECI, i.e. contingent upon the outcome of this interpleader action.

7. Once the interpleader action was removed to the Houston Bankruptcy Court it was assigned case number 81–0537 HP.

8. Statute 11 U.S.C. § 362 provides in relevant part:
    (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title operates as a stay, applicable to all entities, of—
    (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the com-

oil in question came within the exclusive jurisdiction of the Chicago Bankruptcy Court pursuant to 28 U.S.C. § 1471(e).[9] WTM argued ECI had no interest in the disputed crude oil and therefore the interpleader action did not fall within the jurisdiction of either the Chicago or Houston Bankruptcy Courts. WTM also urged Judge Patton to remand the interpleader action to this Court for equitable reasons.[10]

Judge Patton did not reach the merits of ECI's claim of title and therefore made no determination as to whether or not the disputed crude oil constituted property of the debtor within the meaning of 11 U.S.C. § 362(a)(2). Judge Patton did find, however, that 28 U.S.C. § 1471 gave the bankruptcy court concurrent jurisdiction with the district court to resolve the title dispute presented in the interpleader action. After careful consideration of the equities involved, Judge Patton ordered the interpleader action remanded to this Court, pursuant to 28 U.S.C. § 1478(b), for resolution of the title claims.[11] In his remand order, Judge Patton specifically left unresolved all other pending motions before him and directed that such motions should be reurged before this Court for appropriate resolution.[12] None of these motions have been filed or reurged before this Court since Judge Patton's remand.

### B. WTM's Request for Injunctive Relief

WTM filed its Motion for Preliminary Injunction on January 18, 1982. WTM asserts this Court, having jurisdiction over the interpleader action pursuant to 28 U.S.C. 1335, is authorized to enjoin duplicative suits under the provisions of 28 U.S.C. § 2361.[13]

WTM's injunction request was precipitated by Continental Bank's discovery de-

---

mencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

\*　\*　\*　\*　\*　\*

**9.** 28 U.S.C. § 1471 provides:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, whereever located, of the debtor, as of the commencement of such case.

**10.** WTM argued also that pursuant to 28 § 1471(d) Judge Patton could abstain from hearing the interpleader action for equitable reasons.

**11.** Although Judge Patton expressed some concern that the decision in *Marathon Pipeline Co. v. Northern Pipeline Construction Co.*, 12 B.R. 946 (D.Minn.1981) *prob. juris. noted,* 454 U.S. 1029, 102 S.Ct. 564, 70 L.Ed.2d 472 (1981) raises a serious question as to the bankruptcy court's jurisdiction over this matter, his remand decision was based primarily on his assessment that judicial economy would be better served by a trial in the district court.

**12.** These pending motions included ECI's (1) Motion for Dismissal of Interpleader Action; (2) Motion to Transfer Houston Adversary Proceeding to Chicago; (3) Motion to Dismiss Falco's Adversary Proceeding; and (4) Request for Hearing on Falco's Request to Modify Stay.

**13.** The provisions of 28 U.S.C. § 2361 state in pertinent part:

In any civil action of interpleader under § 1335 of [Title 28], a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or

mands directed to WTM in the Chicago adversary proceeding. Specifically Continental Bank had filed a motion to compel the discovery of matters which addressed the same claims at issue in the interpleader action. Moreover, Continental Bank sought to hold WTM in contempt of court for its participation in this interpleader action, allegedly in violation of the automatic stay provisions of Section 362 of the Bankruptcy Code, 11 U.S.C. § 362. On February 10, 1982 a hearing was held in the Chicago Bankruptcy Court, before Hon. Federick J. Hertz, on Continental Bank's motions to compel WTM to produce certain documents, to enjoin WTM from proceeding in this interpleader action, and to enjoin WTM from proceeding on the instant preliminary injunction request. Judge Hertz granted Continental Bank's Motion to Compel, however, he reserved ruling on the other motions subject to receipt of a transcript of the remand hearing before Judge Patton. An additional hearing was scheduled in Chicago for April 6, 1982 wherein Judge Hertz would issue his ruling on the motions taken under advisement.

■ By its plain language, 28 U.S.C. § 2361 authorizes this Court to enter an order restraining all claimants from instituting a proceeding in any federal or state court affecting the 155,000 barrels of oil involved in the instant interpleader action. *United States v. Major Oil Corp.*, 583 F.2d 1152, 1157 (10th Cir. 1978); *United States v. Estate of Swan*, 441 F.2d 1082, 1086 n. 3 (5th Cir. 1971). District courts are afforded this power in order to reduce the possibility of inconsistent determinations or the inequitable distribution of the fund. *United*

*States v. Major Oil Corp., id.* at 1158. Section 2361 injunctive relief may be sought by either the stakeholder, i.e., Shell, or a claimant such as WTM. *Id.*

ECI opposed WTM's request for a § 2361 injunction on the following grounds: (1) the subject matter of this interpleader action, fell within the exclusive jurisdiction of the Chicago bankruptcy court, pursuant to 28 U.S.C. § 1471(e); (2) Shell's initiation of this interpleader action, after commencement of the Chicago bankruptcy proceeding, violated the automatic stay provisions of 11 U.S.C. § 362; and (3) Continental Bank is a necessary party to this interpleader action and this Court cannot acquire jurisdiction over Continental Bank.

ECI's contention that this Court lacks jurisdiction over the disputed oil on the grounds that the interpleader dispute involves property of the debtor's (ECI's) estate, within the meaning of 28 U.S.C. § 1741(e), is premature. Judge Patton rejected this contention in his decision to remand this matter to the district court. This remand decision is non-reviewable under 28 U.S.C. § 1478(b).[14] The Chicago Bankruptcy Court does not have exclusive jurisdiction over the disputed 155,000 barrels of oil for the very reason that it has yet to be determined whether or not the oil was property of the bankrupt's (ECI's) estate at the commencement of the Chicago bankruptcy proceeding. The question raised by Shell in this interpleader action is precisely, to whom does the oil belong? This issue will be resolved at a full trial on the merits before this Court.

■ ECI's second contention that plaintiff Shell's initiation of this interpleader

United States court affecting the property, instrument or obligation involved until further order of the Court . . .

Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent and make all appropriate orders to enforce its judgment.

14. 28 U.S.C. § 1478 provides in relevant part:
(a) A party may remove any claim or cause of action in a civil action . . . to the

bankruptcy court for the district where such civil action is pending. If the bankruptcy courts have jurisdiction over such claim or cause of action.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order under this subsection remanding a claim or cause of action, or a decision not so remanding, is not reviewable by appeal or otherwise.

action was in violation of the Chicago bankruptcy court's automatic stay, pursuant to 11 U.S.C. 362, is simply not supported by the case law. As stated in *Dakota Livestock Company v. Keim*, 552 F.2d 1302, 1305 (8th Cir. 1977).

> If a party is in the actual possession of money or property the ownership of which is disputed, his right to interplead the funds is not affected by the fact that one of the claimants is a trustee in bankruptcy who contends that the funds belong to the estate that he is administering.

As stated in the complaint for interpleader relief, the property in question in this suit (to wit, approximately 155,000 barrels of crude oil) was in the possession of plaintiff Shell at the time this suit was instituted. *See also United States v. Mansion House Center North Redevelopment Co.*, 594 F.2d 653, 656–657 (8th Cir. 1979). Even if it is disputed as to whether or not plaintiff Shell had possession of the oil at the initiation of this litigation, it is clear that this Court has jurisdiction to determine whether or not it can exercise interpleader jurisdiction over this matter. As noted in *Amoco Pipeline Co. v. Admiral Crude Oil Corp.*, 490 F.2d 114, 116 (10th Cir. 1974):

> [T]he New Mexico Court had 'jurisdiction to decide whether the case [is] properly before it,' *United States v. Shipp*, 203 U.S. 563, 573, 27 S.Ct. 165, 166, 51 L.Ed. 319 (1906); *United States v. Mineworkers*, 330 U.S. 258, 291, 67 S.Ct. 677, 91 L.Ed. 884 (1947). In the case at bar, the New Mexico district court necessarily had to consider the merits of at least one portion of the case before it. It had to decide who had possession, and who had title to the oil in issue, in order to ascertain if it had jurisdiction of the case and whether it should stay its proceed-

ings. Thus as often happens, a determination of jurisdiction necessarily also decides a substantive issue.

ECI has failed to state which of the eight subjects of section 362(a) were allegedly violated by the institution of this interpleader action. It is readily apparent to the Court after oral argument, however, that ECI contends the interpleader action involves either a claim against the debtor (ECI) within the meaning of section 362(a)(1) or an action to obtain possession of property of the estate within the meaning of § 362(a)(3). Neither one of these contentions is supportable at this time.

Section 362(a)(1) applies by its terms only to, *inter alia*, proceedings to recover a claim against the debtor that arose before the commencement of the Chapter 11 case. This action does not involve a claim against ECI which arose prior to ECI's filing its Chapter 11 petition, because no dispute then existed over title to the oil in Shell's possession. Section 362(a)(3) applies by its terms only to acts to obtain possession of property of the debtor's estate. This interpleader action does not seek to obtain property from the debtor's estate, but rather to determine whether the oil is in fact property of the estate. ECI has cited no authority and the Court's research has failed to reveal any in which an interpleader action, naming a debtor as a claimant, has been construed as the assertion of a claim against the debtor or against his property.

No other subpart of Section 362(a) is arguably applicable to this case. ECI has failed to support its conclusory allegation in that regard. Moreover, in light of Judge Patton's remand, it is incongruous to suggest that the parties to the interpleader action are prohibited from proceeding before this Court.[15]

Finally, ECI's assertion that Continental Bank is a necessary party to this

---

15. Defendant P&O Falco, Inc. filed a petition for relief from any automatic stay that may be applicable to this case, pursuant to § 362(e), on July 14, 1981 in the Houston Bankruptcy Court. The petition named all of the parties to this interpleader action and apparently was intended to apply to all the parties to the litigation. The bankruptcy code provides that thirty days after petition for relief has been filed, pursuant to § 362(e), the automatic stay is automatically lifted unless the bankruptcy court determines after a hearing that the stay should not be

interpleader action and that this Court cannot acquire jurisdiction over Continental because of § 94 of the National Banking Act, 12 U.S.C. § 94, is unfounded. ECI acknowledges that Continental's only interest is a "blanket security interest against 'inventory' of ECI." In short, Continental can assert no claim if the oil is not inventory of ECI. However, if the oil were found to be inventory of ECI, Continental Bank's claim would not be an "adverse" claim, as required under the interpleader statute, because ECI concedes Continental's rights in that regard. 28 U.S.C. § 1335. Hence, Continental is not a necessary party. Secondly, § 94 is a venue statute, and is not jurisdictional. Improper venue is an objection that only Continental could assert and not ECI. Moreover the venue provision of the National Banking Act is not applied to *in rem* actions. *Casey v. Adams,* 102 U.S. 66, 26 L.Ed. 52 (1880).

In short most of ECI's contentions in opposition to WTM's Motion for Preliminary Injunction, beg the question in that ECI assumes it has a property interest in the oil which is the subject of the interpleader action here. However, that is precisely what this Court is called upon to decide. Unless and until it is found, from the evidence to be presented in a full trial on the merits, that ECI obtained an interest in the oil held by Shell, arguments predicated upon property rights of ECI have no application. Only when and if ECI is found to have property interests in any of the 155,000 barrels of oil in dispute here would the bankruptcy rules applicable to property interests of the debtor possess any relevance. At this point in time they simply do not.

■ Section 2361 clearly provides for restraining of actions already commenced.

Another court in this district has had occasion to consider the scope of authority granted by the provision, and determined that courts clearly can enjoin further prosecution of pending actions as well as the filing of new suits affecting the interpleader fund. *Aetna Casualty & Surety Co. v. Ahrens,* 414 F.Supp. 1235, 1243 (S.D.Tex. 1975). *See also Metropolitan Life Insurance Co. v. Harris,* 446 F.Supp. 936, 938 (E.D.Wis.1978). Once the procedural prerequisites of statutory interpleader are satisfied (jurisdiction over the interpleader action and deposit of the interpleaded res or bond with the court) the issuance of an injunction under § 2361 is entirely within the discretion of the district judge. *Commerce and Industry Insurance Company v. Cablewave Ltd.,* 412 F.Supp. 204, 206 (S.D. N.Y.1976).

In *Ahrens* the court ruled that "[n]otice and hearing prior to the issuance of a temporary restraining order or preliminary injunction are not required by § 2361 ..." *Ahrens,* 414 F.Supp. at 1242.[16] Indeed, "paragraph (e) of Rule 65 [Fed.R.Civ.P.] provides expressly that the requirements of that rule are not applicable to preliminary injunctions in actions of interpleader or in the nature of interpleader under § 2361, title 28 U.S.C." *Prudential Insurance Company of America v. Shawver,* 208 F.Supp. 464, 470 (W.D.Mo.1962).

■ After careful consideration of the equities in this matter, the Court determines that it should exercise its discretion under the aegis of § 2361 and restrain ECI from prosecuting the Chicago bankruptcy proceeding to the extent that it would affect the interpleaded 155,000 barrels of crude oil the title of which is in dispute in this action. This injunction will remain in effect only until this Court has made a

---

lifted. *But see In Re Coleman American Companies, Inc.* 8 B.R. 384 (D.Kan.1981) (relief from automatic stay must be sought from court in which Chapter 11 proceeding is pending); *In Re Coleman American Companies, Inc.,* 6 B.R. 251 (D.Colo.1980) (relief from automatic stay

may be sought from court other than one in which Chapter 11 proceeding is pending).

**16.** Nevertheless, since ECI is a defendant in this interpleader action it received notice of WTM's injunction request.

determination of title. Trial has been set for June, 1982.

The Court's decision is based on the following factors: (1) Plaintiff Shell has supported WTM's motion for injunctive relief pursuant to 28 U.S.C. § 2361 on the ground that if the injunctive relief is not granted Shell, in all likelihood, will be subjected to further discovery in the Chicago proceeding, which discovery will cause further disruption of its business. The avoidance of this duplication of discovery, as well as the other efforts which are involved in multiple litigation, is one of the very reasons Shell initiated this interpleader action; (2) ECI's participation in the Chicago bankruptcy proceeding will not facilitate a prompt determination of the title dispute involved in this interpleader action; (3) The issues in this interpleader action have been fairly narrowly defined; (4) The bankruptcy proceeding in Chicago involves numerous parties who are not parties to the interpleader action and concerns millions of dollars of property of which the 155,000 barrels of oil represents an almost inconsequential fraction; (5) Extensive discovery has already been completed or scheduled in this interpleader litigation and the parties are moving rapidly towards trial; and (6) The plaintiff and all the defendants except for ECI and P&O Falco are Texas corporations and the outcome of this case will turn on interpretation of Texas law and the customary practices in the oil industry in general and of Shell Pipe Line in particular. In short, this Court finds no just cause for abating this action and permitting the subject of this interpleader litigation to become prematurely entangled with a complex bankruptcy proceeding in a foreign forum.

Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED that WTM's Motion for an Injunction pursuant to 28 U.S.C. § 2361 is hereby GRANTED and defendant ECI is enjoined, until further order of this Court, from prosecuting Adversary Proceeding A 812075 to the extent that it affects the property, instrument, and obligation involved in this interpleader action, namely, 155,000 barrels of crude oil, any proceeds thereof, rights accruing therefrom, and a six million dollar surety bond posted by P&O Falco, Inc.